Kenneth M. Motolenich-Salas (AZ Bar No. 027499)
kmotolenich@weissiplaw.com
WEISS & MOY, P.C.
4204 N. Brown Avenue
Scottsdale, Arizona 85251
Tel: (480) 994-8888; Fax: (480) 947-2663
Attorney for Plaintiff FlyBoard, Inc.

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| FlyBoard, Inc., a Florida Corporation, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **(Jury Trial Demanded)** |
| Franky Zapata, an individual; and Personal Water Craft Products, a Société A Responsabilité Limitée of France, | |
| Defendants. | |

Plaintiff FlyBoard, Inc. ("FlyBoard"), by and through its undersigned counsel of the firm of Weiss & Moy, P.C., for its Complaint against Defendants Franky Zapata ("Zapata") and Personal Water Craft Products ("PWC"), states and alleges as follows:

**NATURE OF THE ACTION**

1. This action seeks a declaratory judgment that Plaintiff's registration and use of the domain name <flyboard.com> (hereinafter, "the Domain Name") does not violate the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and that Plaintiff is the rightful registered name holder or registrant of the Domain Name. Plaintiff seeks to bar the transfer of the Domain Name to Defendants Zapata and/or PWC.

1

**THE PARTIES AND SUBJECT MATTER**

2.   Plaintiff FlyBoard, at all times relevant to this Complaint, was and is a Florida corporation having a principal place of business located at 36404 Lake Unity Road, Fruitland Park, Florida 34731.

3.   On information and belief, Defendant Franky Zapata ("Zapata"), at all times relevant to this Complaint, was and is a citizen of the country of France. Zapata is the President and Manager of the business formed in France known as Personal Water Craft Product ("PWC").

4.   On information and belief, Defendant Personal Water Craft Product ("PWC"), at all times relevant to this Complaint, was and is a Société A Responsabilité Limitée of France registered under number 502 833 833 RCS Aix en Provence, with a principal place of business located at 39 Avenue Saint Roch, 13740, Le Rove, France.

5.   The subject of this action is the right to register, maintain, and use the Doman Name.

**JURISDICTION AND VENUE**

6.   Jurisdiction is proper in this Court under the Lanham Act, 15 U.S.C. § 1121(a), and pursuant to 28 U.S.C. §§ 2201(a) and 2202, as Plaintiff seeks a declaration and judgment regarding its rights and obligations in an actual controversy within this Court's jurisdiction, concerning its rights in and to the Domain Name. Subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331, giving this Court original and exclusive jurisdiction in a civil action raising a federal question under 28 U.S.C. § 1338 (i.e., the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the ACPA, 15 U.S.C. §1125(d)), involving the trademark and cybersquatting laws of the United States, respectively.

7.   This Court has personal jurisdiction over Defendant Zapata because it has sufficient contacts with the State of Arizona and this judicial District subjecting it to general and specific personal jurisdiction of this Court.   Defendant Zapata has purposefully availed itself to this forum through general business presence and by filing a Uniform Domain Name Dispute Resolution Policy ("UDRP") with the World

1  Intellectual Property Office ("WIPO") Arbitration and Mediation Center concerning the
2  Domain Name, which is registered through GoDaddy.com LLC ("GoDaddy"), whose
3  principal place of business is in Arizona.  On January 7, 2013, WIPO ordered transfer
4  of the Domain Name to Defendant PWC if Plaintiff did not act quickly by filing a
5  declaratory judgment action in the District of Arizona (WIPO Case No. D2012-2166).

6        8.    This Court has personal jurisdiction over Defendant PWC because it has
7  sufficient contacts with the State of Arizona and this judicial District subjecting it to
8  general and specific personal jurisdiction of this Court.  Defendant PWC has
9  purposefully availed itself to this forum through general business presence and by filing
10 a Uniform Domain Name Dispute Resolution Policy ("UDRP") with WIPO concerning
11 the Domain Name, which is registered through GoDaddy, whose principal place of
12 business is in Arizona.  On January 7, 2013, WIPO ordered transfer of the Domain
13 Name to Defendant PWC if Plaintiff did not act quickly by filing a declaratory
14 judgment action in the District of Arizona (WIPO Case No. D2012-2166).

15       9.    Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391(b)
16 and (c) because the Court has personal jurisdiction over Defendants and because a
17 substantial part of the events or omissions giving rise to FlyBoard's claims herein
18 occurred in this judicial district.

19 <center>**ALLEGATIONS COMMON TO ALL COUNTS**</center>

20       10.    Plaintiff FlyBoard is a highly specialized company well-known for its
21 skills in the field of distribution of products in the field of jet skis and accessories.

22       11.    Plaintiff FlyBoard, through its predecessor FlyBoard North America, Inc.,
23 and Defendant PWC entered into a contract on or about February 29, 2012, entitled
24 *Master License and Distribution Agreement* (hereinafter sometimes referred to as the
25 "FlyBoard Contract").

26       12.    Under the FlyBoard Contract, FlyBoard would have the rights of
27 importation, promotion, distribution, marketing, and sales in interstate commerce of
28 PWC's products.

<center>3</center>

1       13.    After the execution of the FlyBoard Contract, Lowell Kim Robinson ("Robinson"), president of Plaintiff, notified Defendants that the corporate name under the FlyBoard Contract would be FlyBoard, Inc. (a change from FlyBoard North America, Inc.), and that change was accepted by Defendants.

      14.    Defendants have been doing business with FlyBoard since the inception of the FlyBoard Contract, and have accepted FlyBoard's substantial performance and payments to PWC.

      15.    Plaintiff FlyBoard, through Robinson, obtained the Domain Name on May 14, 2012 for purposes of performing under the FlyBoard Contract.

      16.    FlyBoard owns all right, title, and interest in the Domain Name.

      17.    The Domain Name was originally created on April 25, 1999.

      18.    Since acquiring the Domain Name, Plaintiff has used the Domain Name to offer for sell and sell personal watercraft (namely, water-jet propulsion driven harnesses) in interstate commerce.

      19.    As such, Plaintiff has substantial common law rights in and to the Domain Name.

      20.    Robinson filed an application for a United States Trademark on April 11, 2012 for FLYBOARD in international class 12 for personal watercraft (namely, water-jet propulsion driven harnesses), which was assigned Serial No. 85/594,217 ("the FlyBoard Mark").

      21.    Robinson has assigned all her rights, title, and interest in and to the FlyBoard Mark to Plaintiff FlyBoard.

      22.    The FlyBoard Mark published for opposition on September 18, 2012.

      23.    Defendant PWC filed an application for a United States Trademark on April 5, 2012 for FLYBOARD in international class 12 for, *inter alia*, apparatus for locomotion by land, air or water, namely, motor-driven water vehicles; propulsion system capable of operating equally well in air or under water, namely, a personal watercraft propulsion device comprising a board with boots onto which a passenger can

1 ride, propelling the board with a thrust unit supplied with pressurized fluid from a
2 compression station, which was assigned Serial No. 79/112,746, claiming a priority
3 date of October 10, 2011 based French Trademark No. 11 3865414 filed October 10,
4 2011 ("PWC Mark").

5   24.   Defendant PWC filed a complaint ("WIPO Complaint") with WIPO
6 pursuant to the UDRP on October 31, 2012 seeking transfer of the Domain Name from
7 PWC.

8   25.   The complaint was assigned WIPO Case No. D2012-2166.

9   26.   In the WIPO Complaint, PWC contended that the Domain Name was
10 identical to the PWC Mark, in which PWC claims to have rights superior to Plaintiff.

11   27.   PWC further alleged in the WIPO Complaint that Plaintiff had no rights
12 or legitimate interests in the Domain Name, which is comprised of the term
13 "FlyBoard".

14   28.   PWC further alleged in the WIPO Complaint that Plaintiff's registration
15 of the Domain Name was done to cause confusion with the PWC Mark.

16   29.   PWC further alleged in the WIPO Complaint that Plaintiff registered and
17 used the Domain Name in bad faith.

18   30.   In responding to the WIPO Complaint, Plaintiff stated that, pursuant to
19 the FlyBoard Contract, PWC granted to FlyBoard the right to use the FlyBoard Mark
20 for the purposes of importation, promotion, distribution, marketing, and sales in
21 interstate commerce, such that its registration and use of the Domain Name was done
22 for legitimate purposes and not in bad faith.

23   31.   Moreover, in responding to the WIPO Complaint, Plaintiff stated that,
24 pursuant to the FlyBoard Contract, PWC granted to FlyBoard the right to use the
25 FlyBoard Mark on the Domain Name and in any other communication or business or
26 commercial documentation.

27
28

1       32. As such, in order to protect the FlyBoard Mark, Robinson filed an application for the FlyBoard Mark, in which it had substantial common law rights, and assigned all her rights, title, and interest in the FlyBoard Mark to FlyBoard.

33. As explained in the WIPO proceeding, Plaintiff, before purchasing the Domain Name, consulted with and offered it to PWC. However, PWC declined to purchase the Domain Name, stating that Plaintiff could own the Domain Name because other distributors of PWC's products owned similar PWC-related domain names.

34. Moreover, as explained in the WIPO proceeding, PWC acknowledged to Plaintiff that the Domain Name was Plaintiff's sole property and that PWC was willing to change its own website to ensure that Plaintiff's information and Domain Name were correctly stated therein.

35. Furthermore, PWC facilitated Plaintiff's ownership, use, and maintenance of the Domain Name by providing website-related materials to Plaintiff for the Domain Name.

36. Lastly, Plaintiff requested that WIPO suspend the proceedings pursuant to UDRP Section 4(k), which allows for suspension of such proceedings in light of a pending court matter involving ownership of a domain name. This request was based on the third party complaint Plaintiff FlyBoard filed on November 15, 2012 against Defendants in the Southern District of Florida (*Li v. FlyBoard, Inc.*, Case No. 0:12-cv-61323-DMM, Doc. No. 59) seeking, *inter alia*, declaratory judgment of ownership of the FlyBoard Mark and Domain Name.

37. Notwithstanding these facts, the WIPO arbitration panel did not suspend the proceeding and erroneously concluded that the Domain Name was registered and used by Plaintiff in bad faith.

/ / /
/ / /
/ / /
/ / /

6

## COUNT I: DECLARATORY JUDGMENT OF NO VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT (28 U.S.C. §2201(a), 15 U.S.C. §§ 1114(2)(D)(v) AND 1121(a))

38. Plaintiff repeats and by this reference incorporates each and every allegation set forth in the preceding paragraphs as those set forth in full herein.

39. Given Plaintiff's *bona fide* prior actual use in interstate commerce of the FlyBoard Mark, which is the term used in the Domain Name, Plaintiff has substantial prior common law rights in its use to the FlyBoard Mark, which are not wiped out and thus not erased by the filing of the PWC Mark or any other action taken by Defendants.

40. Plaintiff rightfully registered and has used the Domain Name in good faith with no intent to sell it to Defendants or any third party.

41. Plaintiff has no intent to divert any traffic away from any of Defendants' websites, and avers that there is no evidence that such has occurred.

42. PWC acknowledged to Plaintiff that the Domain Name was Plaintiff's property. As such, any contract right to which Defendants may have been entitled were waived and given to Plaintiff.

43. Relying on this waiver, Plaintiff took actions in developing the Domain Name.

44. Since this prior use, Plaintiff has consistently and continuously used the the FlyBoard Mark, which is the term used in the Domain Name, in interstate commerce to sell personal watercraft (namely, water-jet propulsion driven harnesses).

45. By virtue of its prior common law rights, Plaintiff, as a prior user, has rightful, sole ownership of the FlyBoard Mark, which is the term used in the Domain Name, for a personal watercraft (namely, water-jet propulsion driven harnesses) and thus has substantial common law rights to its use to the FlyBoard Mark.

46. Plaintiff is or was the registrant of the Domain Name within the meaning of 15 U.S.C. § 1114.

7

1    47. Plaintiff has paid for the Domain Name and invested significant money
2 into its development over time.
3    48. The Domain Name is very valuable, and would cost hundreds of
4 thousands of dollars to replace.
5    49. In registering the Domain Name, Plaintiff has a legitimate interest in the
6 inherent value of the Domain Name and has used the Domain Name consistently with
7 such purpose.
8    50. Plaintiff's rights in the Domain Name and the FlyBoard Mark are
9 legitimate and superior to all others, including Defendants.
10    51. Plaintiff is entitled to sole use and ownership of the Domain Name and
11 FlyBoard Mark.
12    52. Defendants have no exclusive right to use the term "FlyBoard" as a
13 trademark or otherwise.
14    53. The Domain Name was not registered or used, nor is it being used, in bad
15 faith by Plaintiff.
16    54. The Domain Name is neither identical nor confusingly similar to any
17 mark for which a party has rights superior to those of Plaintiff in the term used in the
18 Domain Name, including but not limited to Defendants PWC and Zapata.
19    55. Defendants PWC and Zapata have contended that Plaintiff has no right or
20 legitimate interest in respect of the Domain Name.
21    56. Defendants PWC and Zapata have contended that the Domain Name was
22 registered and used, and is being used, by Plaintiff in bad faith.
23    57. Defendants PWC and Zapata have contended that the FlyBoard Mark is
24 identical or confusingly similar to the PWC Mark.
25    58. As a result of the acts and representations of Defendants PWC and
26 Zapata, GoDaddy, the registrar of the Domain Name, has or will suspend, disable, or
27 transfer the Domain Name, or imminently threatens to suspend, disable, or transfer the
28 Domain Name under a policy of or adopted by GoDaddy prohibiting the registration of

a domain name that is identical to, confusingly similar to, or dilutive of another's mark within the meaning of 15 U.S.C. § 1114(2)(D)(ii)(II).

59. There is an actual existing controversy over the rights of ownership of the FlyBoard Mark and the Domain Name.

60. Such controversy is within the jurisdiction of this Court, pursuant to 15 U.S.C. §§ 1114(2)(D)(v) and 1121(a).

61. Plaintiff seeks to remove the legal cloud over title to Plaintiff's valuable property, which has been created by Defendants' actions.

62. To resolve this actual controversy, Plaintiff seeks a declaration and judgment that its registration and use of the Domain Name is with the legitimate interest of exploiting its inherent value and/or is consistent with documented legitimate business efforts and thus constitutes good faith use.

## COUNT II: INJUNCTIVE RELIEF AND DAMAGES PURSUANT TO 15 U.S.C. § 1114(2)(D)(v) (AGAINST ALL DEFENDANTS)

63. Plaintiff repeats and by this reference incorporates each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

64. The ACPA, 15 U.S.C. § 1114(2)(D)(v), provides that a domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter.

65. The ACPA, 15 U.S.C. § 1114(2)(D)(v), provides that the court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

66. Pursuant to 15 U.S.C. § 1114(2)(D)(iv), if a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and

1  material misrepresentation shall be liable for any damages, including costs and
2  attorney's fees, incurred by the domain name registrant as a result of such action.

3      67.   The decision of the WIPO effectively disables Plaintiff's property by
4  creating a legal cloud to Plaintiff's title to the Domain Name. The decision was
5  conceived from the knowing and material misrepresentations of Defendants to the
6  WIPO. The decision has resulted in Plaintiff incurring damages, including without
7  limitation attorneys' fees and costs, to address the disablement of Plaintiff's domain
8  name property.

9      68.   As such, Injunctive relief, in the form of preventing transfer of the
10 Domain Name to Defendants, is appropriate in this action to prevent the reverse domain
11 name hijacking engaged in by Defendants.

## JURY DEMAND

13 Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby sets forth its demand for a jury
14 trial on all issues for which they are entitled to a jury trial.

## PRAYER FOR RELIEF

16 WHEREFORE, Plaintiff FlyBoard, Inc. respectfully prays for relief and
17 judgment against Defendants PWC and Zapata:

18     i.   Declaring that the Plaintiff has a right or legitimate interest in
19        respect of the Domain Name;
20     ii.   Declaring that the Domain Name was not registered by Plaintiff,
21        was not used by Plaintiff, and is not being used by Plaintiff in bad
22        faith;
23     iii.   Awarding sole ownership and control of the Domain Name to
24        Plaintiff;
25     iv.   Prohibiting transfer of ownership and/or control of the Domain
26        Name to Zapata and PWC;
27     v.   Awarding Plaintiff taxable costs incurred herein, with interest
28        thereon at the legal rate until paid in full;

      vi.      Awarding Plaintiff any damages as allowed by law which the facts alleged herein would support, including pre-judgment and post-judgment interest;

      vii.     Awarding Plaintiff its reasonable attorney's fees; and

      viii.    Awarding such other and further relief as the Court deems just and proper.

Dated this 5th day of February, 2013.

                                           Respectfully submitted,

                                           WEISS & MOY, P.C

                                           <u>s/ Kenneth M. Motolenich-Salas</u>
                                           Kenneth M. Motolenich-Salas (AZ Bar No. 027499)
                                           kmotolenich@weissiplaw.com
                                           WEISS & MOY, P.C.
                                           4204 N. Brown Avenue
                                           Scottsdale, Arizona 85251
                                           Tel: (480) 994-8888
                                           Fax: (480) 947-2663
                                           Attorney for Plaintiff FlyBoard, Inc.